**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

AAA STAFFING, LTD. and
APARTMENT STAFFING
MANAGEMENT, INC.,

     Plaintiffs,

v.

ROSALIND BOMER, BRIANNA
BOWEN, BIANCA DANTZLER,
and PRETTY COOL
MAINTENANCE LLC

     Defendants.

Civil Action No. _____

## COMPLAINT FOR INJUNCTIVE RELIEF, DAMAGES, AND ATTORNEYS' FEES

Plaintiffs AAA Staffing, Ltd. ("AAA Staffing"), a Texas limited liability company, and Apartment Staffing Management, Inc. ("ASM"), a Texas corporation, (collectively "AAA entities" or "Plaintiffs"), by and through their undersigned counsel, hereby file this Complaint for Injunctive Relief, Damages, and Attorneys' Fees against Defendants Rosalind Bomer ("Bomer"), Brianna Bowen ("Bowen"), Bianca Dantzler ("Dantzler"), and Pretty Cool Maintenance

LLC ("PCM"), a Georgia corporation, (collectively "Defendants") and in support thereof, alleges as follows:

## INTRODUCTION

1.     This matter arises from a brazenly illegal attempt by Defendants to use and misappropriate the AAA entities' trade secrets, property, and good will to operate a directly competitive business in breach of contractual obligations and common law.

2.     In light of Defendants unlawful acts, the AAA entities bring this action for preliminary and permanent injunctive relief and damages based on its claims for breach of duty of loyalty, theft and misappropriation of trade secrets, violations of the federal Computer Fraud and Abuse Act, violations of Georgia's Computer Systems Protection Act, breach of contract, tortious interference with contracts and business relations, violations of Georgia's Deceptive Trade Practices Act and violations of Georgia's Racketeer Influenced and Corrupt Organizations (RICO) Act. Additionally, the AAA entities seek compensatory damages, treble damages, imposition of a constructive trust, punitive damages, and attorneys' fees.

## **PARTIES**

3.     AAA Staffing is a Texas limited liability company with its principal place of business in Katy, Texas. AAA Staffing submits itself to this Court's

jurisdiction. AAA Staffing's members are all residents of Texas and for purposes of determining diversity jurisdiction, AAA Staffing, Ltd. is a citizen of Texas.

4.     ASM is a Texas corporation with its principal place of business in Katy, Texas. ASM submits itself to this Court's jurisdiction. For purposes of determining diversity jurisdiction, ASM is a citizen of Texas.

5.     Bomer is an individual who resides in Georgia and can be personally served at her residence in Jackson County located at 4610 Sierra Creek Dr., Hoschton, Georgia 30548. Bomer is a citizen of Georgia.

6.     Bowen is an individual who resides in Georgia and can be personally served at her residence in Jackson County located at 4610 Sierra Creek Dr., Hoschton, Georgia 30548. Bowen is a citizen of Georgia.

7.     Dantzler is an individual who resides in Georgia and can be personally served at her residence in Gwinnett County located at 416 Northdale Ct., Lawrenceville, Georgia 30046. Dantzler is a citizen of Georgia.

8.     PCM is a Georgia corporation with its principal place of business located at 3900 Crown Rd SW #16709, Atlanta, GA, 30304, and it may be served with process on its registered agent, LegalCorp Solutions, Inc. at 235 Peachtree St. NE, Suite 400, Atlanta, Georgia 30303.  Upon information and belief, no member

of PCM is a citizen of Texas and thus for purposes of diversity jurisdiction, it is a citizen of Georgia.

## JURISDICTION AND VENUE

9.     Jurisdiction and venue are proper in this Court under the facts and circumstances set forth herein.

10.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship and the amount in controversy exceeds $75,000.00, exclusive of interest and cost.

11.    This Court also has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States and supplemental jurisdiction over all non-federal claims under 28 U.S.C. § 1367 because the other claims are so related to the federal claims that they form part of the same case or controversy.

12.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and (2) because all Defendants reside in this district.

13.    Venue is also proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omission giving rise to the claim occurred in this district.

## FACTS COMMON TO ALL COUNTS

### AAA's Business

14.     The AAA entities provide permanent and temporary personnel solutions for apartment complexes and property management companies ("Apartment Clients").

15.     AAA Staffing provides the personnel who perform the on-site work for the Apartment Clients.

16.     ASM provides managerial and support staff to connect AAA Staffing personnel with the Apartment Clients.

17.     The AAA entities are headquartered in Texas but have offices in Texas, Georgia, and Florida.

18.     The AAA entities have longstanding business relationships with Apartment Clients throughout the country and in the state of Georgia.

19.     To meet Apartment Clients' personnel needs, ASM maintains and updates a proprietary database of over 1,000 potential employees or applicants ("Applicant Database").

20.     The Applicant Database is created by compiling applications received from individuals throughout the United States through the AAA entities online portal.

21.     The AAA entities take reasonable steps to ensure that the Applicant Database and other proprietary, confidential information is protected from disclosure and unauthorized usage.

22.     ASM runs a background check on each applicant and keeps detailed information concerning the applicant's job experience and skill set.

23.     ASM utilizes a third-party's restricted database to run these backgrounds check.

24.     Access to the third-party restricted database is limited, and the terms of the AAA entities' agreement with the third-party require that the background checks be run only on behalf of the AAA entities.

25.     Bomer was aware that her access to the third-party restricted database was limited to only use for the AAA entities.

26.     Apartment Clients contact ASM with personnel needs or job assignments.

27.     ASM cross references the job assignment with the Applicant Database and matches and places appropriate applicants with the Apartment Client.

## Bomer's Employment with the AAA Entities

28.     Bomer was employed with the AAA entities from approximately October 2007 until April 2021.

- 6 -

29.     From September 2018 to her departure in April 2021, Bomer worked for ASM as the Atlanta Sales and Marketing Manager.

30.     In this role, Bomer oversaw ASM's Georgia operations.

31.     Bomer maintained the Applicant Database, was responsible for keeping and strengthening relationships with Apartment Clients, supervising both AAA Staffing and ASM employees, and establishing competitive pricing models for the AAA entities services.

32.     Bomer customarily and regularly solicited customers and prospective customers for the AAA entities and obtained orders and/or contracts.

33.     The AAA entities invested substantial time, effort, money, and other resources in the development and cultivation of long-term business relationships with Apartment Clients and applicants.

34.     The AAA entities provided Bomer with access to their confidential information.

35.     Specifically, Bomer had access to the Applicant Database.

36.     Bomer also had access to the AAA entities' Zipwhip account which allows the AAA entities to communicate with all applicants and Apartment Clients quickly and easily via text message.

**Bomer's Confidentiality Agreement and Covenant Not to Compete**

37.   In 2012, Bomer entered into a Confidentiality Agreement and Covenant Not to Compete (hereinafter the "Agreement") with the AAA entities.  A true and correct copy of the Agreement is attached hereto as Exhibit A.

38.   As part of the Agreement, Bomer agreed to be bound by certain restrictive covenants, including covenant not to disclose confidential information, which provided as follows:

> **"Confidential information"** is information which relates to databases, trade secrets, client lists, customer lists, contact information, business activities, systems, procedures, market information, marketing programs, know-how and other proprietary data of AAA and which is acquired by the Employee as a result of this Agreement and the Employees employment with AAA. This includes, but is not limited to, the following: (1) Trade secrets; (2) All Client information, including but not limited to the lists of Client names and contact information; (3) Any and all employee information whether full or part time employees, including but not limited to the resumes and lists of employees, contract employees, candidates, applicants and any and all information regarding such persons; (4) The business practices and internal procedures of AAA; (5) Development of new procedures for present or future operations of AAA; and (6) Any other knowledge or information regarding the property, business, and affairs of AAA which AAA endeavors to keep confidential.

(Ex. A.)

39.   The Agreement also included a Covenant Not to Compete which provides:

> During the time Employee is employed by AAA, and for a period of one (1) year following termination of such employment, Employee will not compete with AAA anywhere within a 100-mile radius of the office of AAA at 5825 Glenridge Drive, Bldg. 3 Suite 230 Atlanta, Ga. 30328, as follows: (1)

Employee will not compete directly or indirectly with AAA, will not solicit or accept business from any Client of AAA if such business is comparable to the services provided by AAA, and specifically will not work for, serve, assist, manage, act as consultant, or solicit or accept employment from any enterprise which is involved in the business of providing staffing of full or part time employees to the Apartment industry. (2) Employee will not request or advise any Client to curtail, cancel, divert or withdraw its business from AAA; (3) Employee will not solicit or accept employment in any capacity from any Client of AAA or from any competitor of AAA, whether rendering services as an employee, contractor, agent or otherwise; (4) Employee will not induce or attempt to influence in any way any employee of AAA to terminate his/her employment with AAA or his/her relationship with a Client for any reason whatsoever. (5) Employee will not assist any other entity in obtaining business from any Client of AAA if that other entity provides services comparable to the services provided by AAA, which is the business of providing staffing of full or part time employees to the Apartment industry..

(Ex. A)

40.     The AAA entities have legitimate business interests that justify enforcement of the above restrictive covenants.  Specifically, the restrictive covenants protect the AAA entities trade secrets and confidential and proprietary information; the AAA entities substantial relationships with prospective and existing customers; customer and client goodwill associated with the AAA entities' business, including but not limited to its name and marketing or trade area.

### Bomer's Daughters

41.     Bowen and Dantzler are Bomer's daughters.

42.    Bowen was employed by the AAA entities from approximately May 2016 to February 2020.

43.    From April 2019 until February 2020, Bowen worked for ASM and was supervised by Bomer.

44.    From February 2020 until December 2020, Dantzler worked for ASM and was supervised by Bomer.

### Formation of PCM and Direct Competition with the AAA Entities

45.    On December 20, 2019, while employed by ASM, Bowen formed PCM.

46.    Upon information and belief, Bowen formed PCM with the assistance and cooperation of Bomer and Dantzler.

47.    Upon information and belief, Bowen, Bomer and Dantzler used PCM to directly compete against the AAA entities and provide permanent and temporary personnel solutions to apartment complexes and property management companies.

48.    Indeed, upon information and belief, Bomer operated PCM out of the AAA entities' Atlanta office.

49.    Upon information and belief, Bomer used ASM staff, including but not limited to Bomer and Dantzler, and ASM resources to further PCM's business.

50.    For instance, upon information and belief, Bomer used her access to the background check service, provided and paid for by the AAA entities, to conduct background checks on PCM applicants.

51.    Upon information and belief, Bomer accessed and copied the AAA entities' confidential information and trade secrets including but not limited the Applicant Database.

52.    Upon information and belief, Bomer accessed and copied a list of ASM's Apartment Clients which included contact information and other business information.

53.    Upon information and belief, Bomer and Dantzler called this stolen list of Apartment Clients with the intent to solicit their business for PCM.

54.    Upon information and belief, Bomer diverted new applicants and job requests from Apartments Clients away from the AAA entities to PCM.

55.    Upon information and belief, Bomer intentionally failed to open job request from Apartment Clients despite qualified candidates in the Applicant Database.

56.    In December 2020, Bomer significantly increased the price charged by the AAA entities to Apartment Clients, making the AAA entities less competitive in the Georgia market.

57.    Upon information and belief, Bomer rerouted phone calls and business opportunities from the AAA entities to PCM.

### Bomer's Termination

58.    After months of underperformance, ASM confronted Bomer about her poor performance in April 2021.

59.    Bomer responded angrily and resigned from ASM on April 27, 2021.

60.    Upon information and belief prior to her resignation, Bomer logged into the AAA entities' Zipwhip account which contains contact information for the AAA entities' applicants and Apartment Clients and made a copied the database.

61.    Two days after resignation, on April 29, 2021, Bomer sent a text messages to the AAA entities' applicants and/or employees and even the AAA entities' clients, stating:

> "I just walked off my job today after 10 years. I REFUSE to let ANYONE speak down to me, pretty much tell me my job comes before my family and say that I have not had their back nor AAA back in the last year. The environment was toxic but dealt with it because I wanted it to work and love w/hat I do. But today it came to a head, I appreciate your loyalty and business."

### The AAA Entities Suffered Harm Due to Defendants Actions

62.    As a direct and proximate result of Bomer's disloyal actions during her employment, ASM suffered economic and other damages.

63.    As a direct and proximate result of Bomer's breach of her restrictive covenants, AAA Staffing has suffered and continues to suffer damages and other harm, which cannot adequately be remedied through monetary relief alone.

64.    As a direct and proximate result of Defendants theft of trade secrets, the AAA entities have suffered and continue to suffer damages and other harm, which cannot adequately be remedied through monetary relief alone.

65.    As a direct and proximate result of Defendants unauthorized and illegal use of computers and computer networks, the AAA entities have suffered and continue to suffer damages and other harm which cannot adequately be remedied through monetary relief alone.

## COUNT I

## BREACH OF DUTY OF LOYALTY - BOMER

66.    The AAA entities incorporate by reference Paragraphs 1 through 65 above as if fully set forth herein.

67.    As an employee of ASM who had real and/or apparent authority to bind ASM and was provided confidential information, Bomer owed a duty of loyalty and/or fiduciary duty to ASM (in addition to her contractual duties), which duty she breached by utilizing ASM's resources and staff to directly competed ASM during her employment.

68.     Bomer's breach of her duty of loyalty was intentional.

69.     As a direct and proximate result of Bomer's breach of her duty of loyalty, ASM has been damaged by an amount to be determined at trial.  Such damages include, but are not limited to, the compensation ASM paid to Bomer during the breach period, lost profits, and punitive damages.

70.     Additionally, as Bomer's breach of her duty of loyalty was intentional, it constitutes an actual fraud. ASM, therefore, asks that this Court impose a constructive trust as to all money received by Bomer resulting from her breach of the duty of loyalty.

## **COUNT II**

### **THEFT OF TRADE SECRET PURSUANT TO 18 U.S.C. § 1832 – ALL DEFENDANTS**

71.     The AAA entities incorporate by reference Paragraphs 1 through 65 above as if fully set forth herein.

72.     The AAA entities take reasonable steps to protect the Applicant Database and other proprietary information.

73.     The Applicant Database and other proprietary information are business information owned by the AAA entities that is not generally known to the

public and is not readily ascertainable by proper means to persons who could derive value from its disclosure.

74.    The Applicant Database and other proprietary information relate to the AAA entities products and services which are used in or intended for use in interstate commerce.

75.    Thus, the Applicant Database and other proprietary information are trade secrets, as defined under the Defense of Trade Secret Act, 18 U.S.C. §§ 1831 *et seq.*

76.    Upon information and belief, Bomer misappropriated these trade secrets when she stole them and made copies without authorization for Defendants economic benefit and with the intent and/or knowledge that the doing so would injure the AAA entities.

77.    Upon information and belief, Bomer, Bowen and Dantzler conspired to misappropriate these trade secrets for Defendants economic benefit and with the intent and/or knowledge that the doing so would injure the AAA entities.

78.    Upon information and belief, PCM, Bowen, and Dantzler misappropriated these trade secrets by possessing and using these trade secrets with the knowledge that said trade secrets had been stolen or obtained without

proper authorization for Defendants economic benefit and with the intent and/or knowledge that doing so would injure the AAA entities.

79.     As a direct and proximate result of Defendants' actions, the AAA entities have suffered damages, including but not limited to, actual damages, lost profits, harm to its reputation, and the diminution in value of the trade secrets.

80.     Defendants have also been unjustly enriched by the misappropriation and use of these trade secrets and thus the AAA entities are entitled to any economic benefit realized by Defendants from such misappropriation.

81.     Pursuant to 18 U.S.C. § 1836(b)(3), the AAA entities also asks that this Court enjoin Defendants from any continued misappropriated of the AAA entities' trade secrets.

82.     Defendants' actions evidence willful and malicious misappropriation and thus the AAA entities are entitled to exemplary damages.

## COUNT III

### MISSAPPROPRIATION OF TRADE SECRETS PURSUANT TO GEORGIA TRADE SECRETS ACT, O.C.G.A. §§ 10-1-760 et seq - ALL DEFENDANTS

83.     The AAA entities incorporate by reference Paragraphs 1 through 65 above as if fully set forth herein.

84.    The Applicant Database and other proprietary information are trade secrets, as defined under the Georgia Trade Secrets Act, O.C.G.A. §§ 10-1-760 *et seq*.

85.    The AAA entities take reasonable steps to protect the Applicant Database other proprietary information.

86.    The AAA entities derive economic value from the general public not having access or knowledge of the Applicant Database and other proprietary information.

87.    Bomer acquired this information from the AAA entities as an employee and under circumstances that gave rise to a duty to maintain its secrecy.

88.    Bomer unlawfully disclosed the AAA entities' trade secrets without The AAA entities express or implied consent.

89.    Bowen, Dantzler and PCM knew or had reason to know that the trade secrets were acquired by improper means.

90.    As a direct and proximate result of Defendants' actions, the AAA entities have suffered damages in an amount to be determined at trial.

91.    Pursuant to O.C.G.A. § 10-1-762(c), the AAA entities also ask this Court to compel Defendants to immediately produce all misappropriated trade

secrets, including but not limited to the Applicant Database, and affirm that she has deleted any remaining copies.

92.    Pursuant to O.C.G.A. § 10-1-762(a), the AAA entities also ask this Court to enjoin Defendants from using any of the AAA entities' trade secrets.

93.    Defendants are liable to the AAA entities for actual damages, exemplary damages and attorney's fees, due to Defendants' violation of the Georgia Trade Secrets Act, pursuant to OCGA §§ 10-1-761(1)-(4), 10-1-763(a), 10-1-764.

## COUNT IV

**VIOLATIONS OF THE COMPUTER FRAUD AND ABUSE ACT ("CFAA")
– ALL DEFENDANTS**

94.    The AAA entities incorporate by reference Paragraphs 1 through 65 above as if fully set forth herein.

95.    The AAA entities' computers (which were connected to the internet), Applicant Database, online background screening database, and other devices and restricted databases described in this Complaint were "protected computers" within the meaning of the Federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030, et seq. (the "CFAA")

96.    Bomer's authorization to access and use the AAA entities' protected computers was limited to conducting business on behalf and in furtherance of the AAA Entities.

97.    Bomer violated CFAA § 1030(a)(2)(C), by intentionally accessing the AAA entities' protected computers and/or protected computers used by the AAA entities for storage of data, information, and databases, including but not limited to the Applicant Database, and exceeding her authorized access to obtain information from such protected computers

98.    Bomer violated CFAA §§ 1030(a)(5)(B) and (C) by intentionally and without authorization accessing the AAA entities' protected computers as described above and causing damage and loss to the AAA entities or recklessly causing damage to the AAA entities.

99.    Bomer, Bowen, Dantzler and PCM violated CFAA § 1030(b) by conspiring together to commit actions prohibited by CFAA §§ 1030(a)(2)(C), 1030(a)(5)(B), and 1030(a)(5)(C) as set forth above.

100.   The value of such unauthorized use to the AAA entities was more than $5,000.00.

101.   As a direct and proximate result of Defendants' CFAA violations, the AAA entities have suffered damages and loss and are entitled to civil remedies

pursuant to CFAA § 1030(g), including compensatory damages, injunctive relief, or other equitable relief.

## COUNT V

### COMPUTER THEFT PURSUANT TO O.C.G.A. § 16-9-93
### (GEORGIA COMPUTER SYSTEMS PROTECTION ACT) – BOMER

102.   The AAA entities incorporate by reference Paragraphs 1 through 65 above as if fully set forth herein.

103.   During her employment, Bomer was provided access to computers which remained the property of the AAA entities.

104.   Bomer knew her authorization to use these computers was limited to activities that furthered the AAA entities business.

105.   The AAA entities also provided Bomer with valuable access to it computer network, including the Applicant Database, and a computer network database maintained by a third-party background screening company.

106.   Bomer knew her authorization to use these computer networks was limited to activities that furthered the AAA entities' business.

107.   On several occasions during her employment, Bomer without authorization accessed and used the computers provided to her by the AAA entities

for her and PCM's personal benefit and profit in violation of her known legal obligations.

108.   On several occasions during her employment, Bomer without authorization misappropriated access to and used the computer networks, provided by the AAA entities, for her and PCM's personal benefit and profit, in violation of his known legal obligations.

109.   As a direct and proximate result of Bomer's computer theft and trespass, in violation of the Georgia Computer Systems Protection Act, O.C.G.A. § 16-9-93, the AAA entities have suffered damages in an amount to be determined at trial.

110.   Bomer's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care that would raise the presumption of conscious indifference to consequences.  As such, the AAA entities are entitled to punitive damages in an amount to be determined at trial.

## COUNT VI

## BREACH OF CONTRACT – COVENANT NOT TO COMPETE - BOMER

111.   The AAA entities incorporate by reference Paragraphs 1 through 65 above as if fully set forth herein.

112.   In 2012 Bomer knowingly and voluntarily entered into the Agreement with the AAA entities, which contained restrictive covenants, including a Covenant not to Compete. (Ex. A.)

113.   The Covenant not to Compete in the Agreement is valid, is supported by valuable consideration, and is enforceable.

114.   Bomer's actions, as set forth above, constitute a breach of the Agreement and the Covenant Not to Compete because Bomer is competing against the AAA entities by working for PCM which is located at 3900 Crown Rd SW #16709, Atlanta, GA, 30304 and is within a 100-mile radius of 5825 Glenridge Drive, Bldg. 3 Suite 230 Atlanta, Ga. 30328.

115.   As a direct and proximate result of Bomer's breach of the Agreement, the AAA entities have suffered and will continue to suffer irreparable harm and other injury and damages, including but not limited to lost investment, lost profits, damage to their relationships with customers, and damage to their business reputation and goodwill, and for some of such injuries, there is no adequate remedy at law.

## COUNT VII

## BREACH OF CONTRACT – CONFIDENTIALITY - BOMER

116.  The AAA entities incorporate by reference Paragraphs 1 through 65 above as if fully set forth herein.

117.  In 2012, Bomer knowingly and voluntarily entered into the Agreement with the AAA entities, which contained restrictive covenants, including a covenant not to disclose confidential information (Ex. A.)

118.  The covenant not to disclose confidential information is valid, is supported by valuable consideration, and is enforceable.

119.  Bomer's actions, as set forth above, constitute a breach of the Agreement and the covenant not to disclose confidential information.

120.  As a direct and proximate result of Bomer's breaches of the Agreement, AAA entities have suffered and will continue to suffer irreparable harm and other injury and damages, including but not limited to lost investment, lost profits, damage to their relationships with customers, and damage to their business reputation and goodwill, and for some of such injuries, there is no adequate remedy at law.

## COUNT VIII

## TORTIOUS INTERFERENCE WITH CONTRACT - PCM

121.   The AAA entities incorporate by reference Paragraphs 1 through 65 above as if fully set forth herein.

122.   PCM was aware of Bomer's obligations under the Agreement.

123.   Upon information and belief, without privilege, PCM intentionally induced, by improper means, Bomer to breach, against the AAA entities' interest, the Agreement.

124.   By inducing Bomer to breach the Agreement, PCM has tortiously interfered with AAA entities' contractual relationship with Bomer.

125.   By encouraging Bomer to breach her employment agreement, PCM acted with malice and with intent to injure the AAA entities.

126.   As a direct and proximate result of PCM's tortious interference, AAA entities' have suffered and will continue to suffer irreparable harm and other injury and damages, including but not limited to lost investment, lost profits, damage to their relationships with customers, and damage to their business reputation and goodwill, and for some of such injuries, there is no adequate remedy at law.

## COUNT IX

## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS – ALL DEFENDANTS

127.   The AAA entities incorporate by reference Paragraphs 1 through 65 above as if fully set forth herein.

128.   The AAA entities have contractual and business relationships with the Apartment Clients, applicants, and employees of AAA Staffing.

129.   Defendants had knowledge of these relationships.

130.   Upon information and belief, while Bomer was employed by ASM and using the goodwill developed by the AAA entities, PCM, Bowen, and Dantzler unlawfully, intentionally, unjustifiably, and maliciously interfered with the AAA entities' contractual and business relationships the Apartment Clients, applicants, and employees of AAA Staffing by diverting business and applicants intended for the AAA entities to PCM.

131.   After Bomer's employment with ASM and using the goodwill developed by the AAA entities, Bomer unlawfully, intentionally, unjustifiably, and maliciously interfered with the AAA entities' contractual and business relationships the Apartment Clients, applicants, and employees of AAA Staffing by sending a deceptive a misleading text message designed to harm the AAA entities' relationship.

132.   As a direct and proximate result of Defendants tortious interferences, the AAA entities have suffered and will continue to suffer irreparable harm and other injury and damages, including but not limited to lost investment, lost profits, damage to its relationships with customers, and damage to its business reputation and goodwill, and for some of such injuries, there is no adequate remedy at law.

## COUNT X

### VIOLATION OF O.C.G.A. §§ 10-1-372(a)(5) and (a)(8)
### GEORGIA DECEPTIVE TRADE PRACTICES ACT – ALL DEFENDANTS

133.   The AAA entities incorporate by reference Paragraphs 1 through 65 above as if fully set forth herein.

134.   Defendants falsely represented that they were authorized and approved by, and affiliated with, the AAA entities when contacting applicants who had applied to the AAA entities on behalf of PCM with intent to harm the AAA entities in violation of O.C.G.A. § 10-1-372(a)(5).

135.   Defendants falsely represented that they were authorized and approved by, and affiliated with, the AAA entities when operating PCM from the AAA entities' offices with intent to harm the AAA entities in violation of O.C.G.A. § 10-1-372(a)(5).

136.   Bomer violated O.C.G.A. § 10-1-372(b)(8) when she sent a text message to the AAA entities' applicants and/or employees and Apartment Clients disparaging the AAA entities' services and business through false and/or misleading representations.

137.   Defendants are liable to the AAA entities for damages and attorney's fees under the Georgia Deceptive Trade Practices Act, O.C.G.A. § 10-1-373.

138.   The AAA entities are entitled to injunctive relief under O.C.G.A. § 10-1-373.

139.   Defendants' actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care that would raise the presumption of conscious indifference to consequences.  As such, the AAA entities are entitled to punitive damages in an amount to be determined at trial.

## COUNT XI

### VIOLATION OF O.C.G.A. § 16-14-4(a), GEORGIA'S RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO") –ALL DEFENDANTS

140.   The AAA entities incorporate by reference Paragraphs 1 through 65 above as if fully set forth herein.

141.   Defendants have violated Georgia's Racketeer Influenced and Corrupt Organizations Act ("RICO"), O.C.G.A. § 16-14-1, *et seq.,* by engaging in a

systemic and ongoing pattern of racketeering activity, as defined in O.C.G.A. § 16-14-3, including, but not limited to, the predicate acts of theft by conversion (O.C.G.A. § 16-8-4); theft by taking (O.C.G.A. § 16-8-2); computer theft (O.C.G.A. § 16-9-93(a)); and theft of trade secrets (18 U.S.C. § 1832).

142. The acts of racketeering activity committed by Defendants are interrelated by distinguishing characteristics and are not isolated incidents, in that the acts involved the same or similar victims, the same or similar modes of commission, the same or similar financial benefits to Defendants, and the same or similar efforts to conceal the misconduct.

143. Through this pattern of racketeering activity, Defendants have acquired and maintained an interest in and control of personal property, including money.

144. The AAA entities are aggrieved persons within the meaning of O.C.G.A. § 16-14-6(b).

145. The AAA entities have been injured as a result of Defendants violations of O.C.G.A. § 16-14-4 and are entitled to treble damages, punitive damages, and attorneys' fees pursuant to O.C.G.A. § 16-14-6(c).

146. Pursuant to O.C.G.A. § 16-14-6(a)(2), The AAA entities also ask this Court to issue appropriate orders and judgment requiring Defendants to cease their

illegal conduct, and impose reasonable restrictions upon Defendants future activities sufficient to prohibit future violations of the law, including enjoining Defendants from operating a business which provides permanent and temporary personnel solutions to apartment complexes and property management companies for two years in the State of Georgia.

## COUNT XII

### VIOLATION OF O.C.G.A. § 16-14-4(b), GEORGIA'S RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO") – BOMER, BOWEN, AND DANTZLER

147. The AAA entities incorporate by reference Paragraphs 1 through 65 above as if fully set forth herein.

148. Bomer, Bowen, and Dantzler are employed and/or associated with a criminal "enterprise" (hereinafter the "Criminal Enterprise") within the meaning of O.C.G.A. § 16-14-3(3).

149. The Criminal Enterprise included, and continues to include, Defendants Bomer, Bowen, and Dantzler; any current or former agents of PCM; and others currently unknown to the AAA entities (hereinafter the "Criminal Enterprise").

150. The goal of the Criminal Enterprise was and is to unlawfully misappropriate the trade secrets, confidential information, and other property

lawfully belonging to the AAA entities and access computers and/or computer networks without authorization or in excess of authorization.

151.   Bomer, Bowen and Dantzler have participated in the Criminal Enterprise in violation of Georgia's Racketeer Influenced and Corrupt Organizations Act ("RICO"), O.C.G.A. § 16-14-1, *et seq.,* by engaging in a systemic and ongoing pattern of racketeering activity, as defined in O.C.G.A. § 16-14-3, including, but not limited to, the predicate acts of theft by conversion (O.C.G.A. § 16-8-4); theft by taking (O.C.G.A. § 16-8-2); computer theft (O.C.G.A. § 16-9-93(a)); and theft of trade secrets (18 U.S.C. § 1832).

152.   The acts of racketeering activity committed by Bomer, Bowen and Dantzler are interrelated by distinguishing characteristics and are not isolated incidents, in that the acts involved the same or similar victims, the same or similar modes of commission, the same or similar financial benefits to Defendants, and the same or similar efforts to conceal the misconduct.

153.   The AAA entities are aggrieved persons within the meaning of O.C.G.A. § 16-14-6(b).

154.   The AAA entities have been injured as a result of Defendants' violations of O.C.G.A. § 16-14-4 and are entitled to treble damages, punitive damages, and attorneys' fees pursuant to O.C.G.A. § 16-14-6(c).

155.   Pursuant to O.C.G.A. § 16-14-6(a)(2), The AAA entities also ask this Court to issue appropriate orders and judgment requiring Defendants to cease their illegal conduct, and impose reasonable restrictions upon Defendants future activities sufficient to prohibit future violations of the law, including enjoining Defendants from operating a business which provides permanent and temporary personnel solutions to apartment complexes and property management companies for two years in the State of Georgia.

## COUNT XIII

### VIOLATION OF O.C.G.A. § 16-14-4(c), GEORGIA'S RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO") – BOMER, BOWEN, AND DANTZLER

156.   The AAA entities incorporate by reference Paragraphs 1 through 65 above as if fully set forth herein.

157.   Bomer, Bowen and Dantzler have conspired to and endeavored to violate Georgia's Racketeer Influenced and Corrupt Organizations Act ("RICO"), O.C.G.A. § 16-14-4(a)-(b), as detailed in Counts XI and XII, in violation of O.C.G.A. § 16-14-4(c).

158.   Bomer, Bowen and Dantzler have committed overt acts which are also acts of racketeering activity, in furtherance of the conspiracy.  These overt acts

include, but are not limited to, the predicate acts of theft by conversion (O.C.G.A. § 16-8-4); theft by taking (O.C.G.A. § 16-8-2); computer theft (O.C.G.A. § 16-9-93(a)); and theft of trade secrets (18 U.S.C. § 1832).

159.   The AAA entities are aggrieved persons within the meaning of O.C.G.A. § 16-14-6(b).

160.   The AAA entities have been injured as a result of Defendants violations of O.C.G.A. § 16-14-4 and are entitled to treble damages, punitive damages, and attorneys' fees pursuant to O.C.G.A. § 16-14-6(c).

161.   Pursuant to O.C.G.A. § 16-14-6(a)(2), The AAA entities also ask this Court to issue appropriate orders and judgment requiring Defendants to cease their illegal conduct, and impose reasonable restrictions upon Defendants future activities sufficient to prohibit future violations of the law, including enjoining Defendants from operating a business which provides permanent and temporary personnel solutions to apartment complexes and property management companies for two years in the State of Georgia.

## COUNT XIV

## ATTORNEYS' FEES – ALL DEFENDANTS

162.   The AAA entities incorporate by reference Paragraphs 1 through 65 above as if fully set forth herein.

163.   The AAA entities are entitled to an award of attorneys' fees, costs, and expenses pursuant to O.C.G.A. § 13-6-11 because Defendants have acted in bad faith requiring The AAA entities to undertake the unnecessary trouble and expense of filing this lawsuit.   Accordingly, the AAA entities are entitled to attorneys' fees and costs incurred in bringing this litigation pursuant to O.C.G.A. § 13-6-11 and/or other applicable law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, The AAA entities, pray as follows:

(a)   Judgement in the Plaintiffs' favor;

(b)   Immediate, temporary and permanent injunctive relief:

    i.   Prohibiting Bomer from violating the enforceable restrictive covenants;

    ii.   Requiring Defendants to return all misappropriated trade secrets;

    iii.   Requiring Defendants to cease from using any information obtained or derived from misappropriated trade secrets;

    iv.   Requiring Defendants to delete all copies or information derived from misappropriated trade secrets;

iii. Prohibiting Defendants from falsely represented that they are authorized and approved by, and affiliated with, the AAA entities;

iv. Prohibiting Defendants from disparaging the AAA entities' services and business through false and/or misleading representations; and

v. Prohibiting Defendants from operating a business which provides permanent and temporary personnel solutions to apartment complexes and property management companies for two years in the State of Georgia pursuant to O.C.G.A. § 16-14-6(a)(2),

(c) That the Court impose a constructive trust upon any and all property and money held by Defendants that resulted from Bomer's intentional breach of her duty of loyalty;

(d) Compensatory damages, in an amount to be determined by a jury;

(e) The AAA entities be awarded three times the actual damages they sustained as a result of Defendants pattern of racketeering activity, pursuant to O.C.G.A. § 16-14-6;

(f) Exemplary damages, in an amount determined by a jury;

(g)     Attorney's fees and other costs of litigation;

(h)     that a trial by jury as to all issues so triable be had; and

(i)     that the Court grant such other and further relief as this Court deems just and proper.

Respectfully submitted this 3rd day of May, 2021.

> HALL, GILLIGAN, ROBERTS
> & SHANLEVER LLP
>
> */s/ Kristen W. Goodman*
> Kristen W. Goodman
> Georgia Bar No. 300881
> Wayne M. Cartwright
> Georgia Bar No. 257328
> 3340 Peachtree Road, Suite 1900
> Atlanta, Georgia 30326
> Phone: (404) 442-8776
> Facsimile: (404) 537-5555
> kgoodman@hgrslaw.com
> wcartwright@hgrslaw.com
>
> *Attorneys for Plaintiff*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(D), the undersigned counsel certifies that the foregoing Joint Preliminary Report and Discovery Plan has been prepared in Times New Roman font, 14-point type, which is one of the font and point selections approved by the Court in Local Rule 5.1(B).

*/s/ Kristen W. Goodman*
Kristen W. Goodman