## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

AAA STAFFING, LTD. and APARTMENT
STAFFING MANAGEMENT, INC.,

      Plaintiffs,

              v.

ROSALIND BOMER, BRIANNA BOWEN,
BIANCA DANTZLER, and PRETTY COOL
MAINTENANCE LLC,

      Defendants.

Civil Action No.
1:21-cv-01831-SDG

## OPINION AND ORDER

This matter is before the Court on Defendants Rosalind Bomer, Brianna Bowen, and Pretty Cool Maintenance LLC's (PCM) motion to dismiss [ECF 26]; Defendant Bianca Dantzler's motion to dismiss [ECF 27]; and Plaintiffs AAA Staffing, LTD. (AAA) and Apartment Staffing Management, Inc.'s (ASM) motions for sanctions against Bomer, Bowen, and PCM [ECF 30], and Dantzler [ECF 31]. After careful review of the parties' briefing, the Court **GRANTS** Defendants' motions to dismiss and **DENIES** Plaintiffs' motions for sanctions.

## I.     BACKGROUND

The following allegations are accepted as true for purposes of this Order.[1] Together, Plaintiffs offer personnel services to apartment complexes and property management companies across the United States, including in Georgia.[2] To meet the employment needs of Plaintiffs' customers, ASM maintains a proprietary, confidential database of potential employees.[3] ASM also utilizes a restricted, third-party database to run background checks on new applicants.[4]

Bomer was employed either by AAA or ASM from October 2007 to April 2021.[5] Her last job title was Atlanta Sales and Marketing Manager for ASM, a position that had direct access to the applicant database and an internal account that allowed her to communicate with applicants via text message.[6] Bomer entered

---

[1]   *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1274 n.1 (11th Cir. 1999) ("At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff.").

[2]   ECF 1 (Compl.), ¶¶ 14–18.

[3]   *Id.* ¶¶ 19–21.

[4]   *Id.* ¶¶ 22–24.

[5]   *Id.* ¶ 28.

[6]   *Id.* ¶¶ 29–36.

into both a confidentiality agreement and a non-compete agreement with AAA in 2012.[7]

Bowen and Dantzler are Bomer's daughters.[8] Bowen was employed either by AAA or ASM  from May 2016 to February 2020, and Dantzler was employed by ASM from February 2020 to December 2020.[9] On December 20, 2019, while working for ASM, Bowen formed PCM to provide personnel services similar to those provided by Plaintiffs.[10]

Plaintiffs filed suit on May 3, 2021, against Bomer, Bowen, Dantzler and PCM.[11] Plaintiffs allege that Bowen, Bomer and Dantzler formed PCM using Plaintiffs' applicant database and client list,[12] and used Plaintiffs' background check service to conduct background checks on PCM applicants.[13] Plaintiffs also allege that Bomer purposefully failed to open job requests from Plaintiffs' clients,[14]

---

[7]    ECF 1, ¶¶ 37–40; ECF 1-1, at 2–3.

[8]    ECF 1, ¶ 41.

[9]    *Id.* ¶¶ 42–44.

[10]    *Id.* ¶ 45.

[11]    *Id.*

[12]    *Id.* ¶¶ 46, 47, 48, 57, 60.

[13]    *Id.* ¶¶ 51–54.

[14]    *Id.* ¶ 55.

raised the price of Plaintiffs' services,[15] and disparaged Plaintiffs to clients prior to her departure.[16]

Plaintiffs assert claims against all defendants for misappropriation of trade secrets,[17] computer fraud, [18] tortious interference with business,[19] deceptive trade practices,[20] and RICO violations.[21] Plaintiffs brought independent claims against Bomer for breaches of the duty of loyalty,[22] the covenant not to compete,[23] and the confidentiality agreement,[24] and for violation of Georgia's Computer Systems Protection Act,[25] and against PCM for tortious interference with contract.[26] Plaintiffs also seek attorneys' fees pursuant to O.C.G.A. § 13-6-11.[27]

---

[15]   *Id.* ¶ 56.

[16]   *Id.* ¶ 61.

[17]   *Id.* ¶¶ 71–93.

[18]   *Id.* ¶¶ 94–110.

[19]   *Id.* ¶¶ 127–32.

[20]   *Id.* ¶¶ 133–39.

[21]   *Id.* ¶¶ 140–61.

[22]   *Id.* ¶¶ 66–70.

[23]   *Id.* ¶¶ 111–15.

[24]   *Id.* ¶¶ 116–20.

[25]   *Id.* ¶¶ 102–10.

[26]   *Id.* ¶¶ 121–26.

[27]   *Id.* ¶¶ 162–63.

After requesting an extension of time to respond,[28] which Plaintiffs consented to,[29] Defendants moved to dismiss the Complaint. Bomer, Bowen, and PCM moved to dismiss for lack of subject matter jurisdiction and for failure to state a claim.[30] Dantzler moved to dismiss, separately, for failure to state a claim.[31] Plaintiffs filed responses in opposition to the motions to dismiss,[32] and also filed motions for sanctions, arguing that both motions lack a sound legal basis and claiming that Plaintiffs only consented to an extension of time for Defendants to file answers, not motions to dismiss.[33] Both motions are fully briefed and ripe for consideration.[34]

---

[28]  ECF 15.

[29]  ECF 32-1; ECF 33-1.

[30]  ECF 26.

[31]  ECF 27.

[32]  ECF 28 (Pls.' Opp. to Bomer, Bowen, and PCM Mot. Dismiss); ECF 29 (Pls.' Opp. to Dantzler Mot. Dismiss).

[33]  ECF 30 (Mot. Sanctions against Bomer, Bowen, and PCM); ECF 31 (Mot. Sanctions against Dantzler).

[34]  ECF 32 (Bomer, Bowen, and PCM Resp. to Mot. Sanctions); ECF 33 (Dantzler Resp. to Mot. Sanctions); ECF 34 (Pls.' Reply to Dantzler); ECF 35 (Pls.' Reply to Bomer, Bowen, and PCM). Defendants did not file replies in support of their motions to dismiss.

## II.     LEGAL STANDARDS

### A.     Motion to Dismiss for Lack of Subject Matter Jurisdiction

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may be based on a facial or factual challenge to the complaint. *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (citing *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. May 1981)). A facial attack "requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction," and for purposes of the motion, the allegations in the complaint are taken as true. *Id.* at 1251 (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)) (alterations omitted).

By contrast, a factual attack challenges "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits are considered." *Id.* (quoting *Lawrence*, 919 F.2d at 1529). Bomer, Bowen, and PCM move to dismiss on both facial and factual grounds.

### B.     Motion to Dismiss for Failure to State a Claim

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While "detailed factual allegations" are not required, "labels and

conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To withstand a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must [ ] contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). A complaint is plausible on its face when it contains sufficient facts for the Court to draw the reasonable inference that the defendant is liable for the conduct alleged. *Am. Dental Ass'n*, 605 F.3d at 1289 (citing *Twombly*, 550 U.S. at 556). "A complaint does not state a facially plausible claim for relief if it shows only a sheer possibility that the defendant acted unlawfully." *Waters Edge Living, LLC v. RSUI Indem. Co.*, 355 F. App'x 318, 322 (11th Cir. 2009).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006)). The Court does not, however, accept legal conclusions as true. *Iqbal*, 556 U.S. at 678.

III.    DISCUSSION

The Court "must first determine whether it has proper subject matter jurisdiction before addressing the substantive issues." *Taylor v. Appleton*, 30 F.3d 1365, 1366 (11th Cir. 1994). *See also Blankenship v. Gulf Power Co.*, 551 F. App'x 468, 472 (11th Cir. 2013) (district court had no authority to dismiss complaint on the merits because it lacked subject matter jurisdiction). Accordingly, the Court will first address Bomer, Bowen, and PCM's jurisdictional challenge.

### A.    Subject Matter Jurisdiction

Bomer, Bowen, and PCM argue that the Court lacks subject matter jurisdiction because Plaintiffs have not met their burden, either factually or facially, to show that the amount-in-controversy exceeds $75,000, as required for diversity jurisdiction under 28 U.S.C. § 1332(a).[35] In support of their factual challenge, they have filed an unsigned, unsworn declaration from Bowen, in which she claims that PCM has made around $6,000 in revenue since its formation, and that Plaintiffs have not otherwise been damaged.[36]

The Court does not credit Bowen's unsworn declaration, but nonetheless agrees with Bomer, Bowen, and PCM that Plaintiffs have failed to allege an

---

[35]  *Id.* at 7–8.

[36]  ECF 26, at 20–21.

amount-in-controversy that satisfies the requirement for diversity jurisdiction. "Ordinarily, a plaintiff need only plead an amount sufficient to satisfy the amount-in-controversy requirement in good faith," which "will be second guessed only if it 'appears' to a legal certainty that the claim is really for less than the jurisdictional amount." *Fastcase, Inc. v. Lawriter, LLC*, 907 F.3d 1335, 1342 (11th Cir. 2018) (citations omitted). "However, when the plaintiff pleads an unspecified amount of damages, it bears the burden of proving by a preponderance of the evidence that the claim on which jurisdiction is based exceeds the jurisdictional minimum." *Id.*

Plaintiffs simply allege that "the amount in controversy exceeds $75,000.00, exclusive of interests and costs."[37] This is insufficient to satisfy the amount-in-controversy requirement. *Bradley v. Kelly Servs., Inc.*, 224 F. App'x 893, 895 (11th Cir. 2007) ("A conclusory allegation . . . that the jurisdictional amount is satisfied, without setting forth the underlying facts supporting such an assertion, is insufficient to meet the [plaintiffs'] burden."). Plaintiffs argue that they have adequately alleged an amount-in-controversy because they have asserted fourteen different counts seeking injunctive relief, compensatory damages, punitive damages, and attorneys' fees.[38] But Plaintiffs fail to explain what about these

---

[37]    ECF 1, ¶ 10.

[38]    ECF 28, at 7–8.

claims, or the number of claims asserted, demonstrates that "the monetary value of the object of the litigation from the plaintiff's perspective" exceeds $75,000.00. *Fastcase, Inc.*, 907 F.3d at 1342. The Court cannot discern the amount-in-controversy from Plaintiffs' conclusory statements.

This is not the end of the inquiry, however, because Plaintiffs also allege federal question jurisdiction. 28 U.S.C. 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). Plaintiffs have brought claims against all Defendants under the federal Trade Secrets Act, 18 U.S.C. § 1832,[39] and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.[40] The Court has original subject matter over these claims.

Moreover, the Court may exercise supplemental jurisdiction over state law claims that "are so related to the claims in the action" over which the Court has original jurisdiction "that they form part of the same case or controversy under Article III of the United States Constitution." *Palmer v. Hosp. Auth. of Randolph Cnty.*, 22 F.3d 1559, 1563 (11th Cir. 1994) (quoting 28 U.S.C. § 1367(a)). Claims form part of the same case or controversy where "[t]hey will involve the same witnesses,

---

[39] ECF 1, ¶¶ 71–72.

[40] *Id.* ¶¶ 94–101.

presentation of the same evidence, and determination of the same, or very similar, facts." *Id.* at 1563–64. Here, all of Plaintiffs' claims relate to Defendants' alleged improper use of Plaintiffs' confidential information. The Court will exercise supplemental jurisdiction over the state law claims because they are part of the same case or controversy with the federal trade secrets and computer fraud claims.

### B.    Failure to State a Claim

Having found that it has subject matter jurisdiction, the Court will now address whether Plaintiffs state a plausible claim for relief. Defendants primarily argue that dismissal is warranted because the Complaint contains no factual allegations that support Plaintiffs' claims and, instead, contains a litany of allegations based on Plaintiffs' "information and belief."[41] Defendants also argue that Plaintiffs' computer fraud claims fail as a matter of law.[42] Plaintiffs respond that pleading on information and belief is permissible and that they have alleged facts that support a plausible inference that they are entitled to relief. [43] For the reasons discussed herein, the Court agrees with Defendants that Plaintiffs' Complaint lacks a sufficient factual basis.

---

[41]   ECF 26, at 1–2; ECF 27, at 3–5.

[42]   ECF 26, at 11–12.

[43]   ECF 28, at 10–14.

### i. Plaintiffs' Claim for Violations of the Computer Fraud and Abuse Act (CFAA)

Defendants move to dismiss Plaintiffs' CFAA claim because Bomer was authorized to access Plaintiffs' computers and, in *Van Buren v. United States*, 141 S. Ct. 1648, 1662 (2021), the Supreme Court held that accessing data with authorization, even for an improper purpose, is not a violation of the CFAA.[44] Plaintiffs agree that, under *Van Buren*, Bomer's actions did not violate the CFAA and consent to dismissal of this claim.[45] The Court, therefore, dismisses Plaintiffs' claim for violation of the CFAA (Count IV).

### ii. Plaintiffs' Claims Against Dantzler

Dantzler independently moves to dismiss the claims against her, arguing that Plaintiffs failed to plead any facts about her involvement in the allegedly unlawful conduct.[46] Indeed, the only factual allegations against Dantzler are that she is related to Bomer and Bowen and that she worked for Plaintiffs at the same time as, and was supervised by, Bomer.[47] Plaintiffs have not alleged that Dantzler had access to confidential information, that she was present during the formation

---

[44]   ECF 26, at 11.

[45]   ECF 28, at 16.

[46]   ECF 27, at 3–4.

[47]   ECF 1, at ¶¶ 41–44.

of PCM, or that she ever worked for PCM. Based exclusively on timing and Dantzler's relationship with Bomer and Bowen, Plaintiffs allege, "upon information and belief," that Dantzler used Plaintiffs' confidential information to form PCM and further PCM's business.[48]

The "sheer possibility" that Dantzler assisted her sister in forming and operating PCM is insufficient to state a claim. *Waters Edge Living,* 355 F. App'x at 322. Dantzler's relationships with Bomer and Bowen, standing alone, do not support a plausible inference that Dantzler acted unlawfully. Accordingly, Plaintiffs have failed to state any claim against Dantzler.

### *iii.* Use of Plaintiffs' Confidential or Trade Secret Information

The bulk of Plaintiffs' claims depend on allegations that Bomer accessed Plaintiffs' confidential information, including the applicant database, and used this information to steal Plaintiffs' clients and applicants for PCM. In support of these allegations, Plaintiffs allege the following facts (1) Bomer had access to the applicant database, the background check service, and other confidential information;[49] (2) Bowen and Dantzler worked for Plaintiffs under Bomer's

---

[48] *Id.* ¶¶ 46–47, 49, 53.

[49] *Id.* ¶¶ 35–36.

supervision;[50] (3) Bowen formed PCM while working for Plaintiffs;[51] (4) prior to her departure, Bomer was underperforming and raised the price of Plaintiffs' services in Georgia;[52] and (5) after her departure, Bomer sent a disparaging text message to Plaintiffs' applicants and clients.[53] Plaintiffs ask the Court to infer from these facts that Defendants formed a criminal enterprise for the purpose of stealing Plaintiffs' trade secrets,[54] or, at the very least, misappropriated Plaintiffs' trade secrets to unfairly compete with Plaintiffs.[55]

Plaintiffs' allegations are insufficient to support a plausible inference that Defendants used Plaintiffs' confidential or trade secret information for an improper purpose.[56] Specifically, Plaintiffs failed to allege any facts connecting

---

[50] *Id.* ¶¶ 41–44.

[51] *Id.* ¶ 45.

[52] *Id.* ¶¶ 56, 58.

[53] *Id.* ¶ 61.

[54] *Id.* ¶¶ 140–61 (RICO claims).

[55] *Id.* ¶¶ 71–93 (misappropriation of trade secrets claims); 121–32 (tortious interference claims); 133–39 (deceptive trade practices act claims).

[56] Plaintiffs' RICO claims face the additional hurdle of satisfying the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007) ("Civil RICO claims, which are essentially a certain breed of fraud claims, must be pled with an increased level of specificity.") Seeing as Plaintiffs failed to satisfy even the Rule 8 pleading standard, the Court need not address whether they pled their RICO claims with the required particularity.

Bomer's access to confidential information to Bowen's formation of a competing business. Plaintiffs do not allege, for example, that any client or applicant left Plaintiffs to join PCM or that any client or applicant informed Plaintiffs that Bomer, Bowen, or Dantzler contacted them. Instead, the allegations that Plaintiffs rely on to show this connection are all based on information and belief. For example, Plaintiffs allege, "upon information and belief," that Bowen formed PCM with the assistance of Bomer and Dantzler,[57] that Bomer used the background check service on behalf of PCM,[58] copied the confidential information,[59] and diverted new applicants and job requests from Plaintiffs to PCM.[60]

Plaintiffs are correct that nothing prohibits them from pleading facts based upon information and belief. But the Court will only accept such allegations "where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible." *Boateng v. Ret. Corp. of Am. Partners, L.P.*, No. 1:12-CV-01959-JOF, 2013 WL 12061901, at *4 (N.D. Ga. Mar. 5, 2013) (quotation marks omitted)

---

[57]  *Id.* ¶ 46.

[58]  *Id.* ¶ 50.

[59]  *Id.* ¶¶ 51–52, 60.

[60]  *Id.* ¶¶ 53–54, 57.

(quoting *In Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010)). Whether allegations "upon information and belief" are acceptable depends on the factual allegations in the Complaint. Here, there are no factual allegations from which the Court could draw a plausible inference that Bomer accessed Plaintiffs' confidential information and used it to assist Bowen in forming PCM.

Bomer's alleged disparaging text messages and allegation that she raised the prices charged by Plaintiffs do not make the misappropriation claims more plausible.[61] At most, these facts show that Bomer's employment relationship with Plaintiffs deteriorated prior to her departure. But mere access to confidential information is insufficient to support a claim of misappropriation, even if the individual with access holds animosity towards the owner of the information.

In sum, the factual allegations in the Complaint "are merely consistent with [the Defendants'] liability," but "stop[ ] short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quotation marks omitted) (quoting Twombly, 550 U.S. at 557). Accordingly, Plaintiffs' claims that depend on Bomer and Bowen using Plaintiffs' confidential information for an improper purpose are dismissed. This includes Plaintiffs' claims for

---

[61]    *Id.* ¶¶ 56, 61.

misappropriation of trade secrets (Counts II and III); tortious interference with business relations (Count IX); RICO violations (Counts XI, XII, XIII); Bomer's breach of the duty of loyalty (Count I) and the confidentiality agreement (Count VII); as well as Bomer's violation of O.C.G.A. § 16-9-93 (Count V).

### C.      Supplemental Jurisdiction over the Remaining Claims

What remains are Plaintiffs' claims against Bomer for breaching the covenant not to compete (Count VI) and for violating Georgia's Deceptive Trade Practices Act (Count X), against PCM for tortious interference with contract (Count VIII), and for attorneys' fees pursuant to O.C.G.A. § 13-6-11 (Count XIV). Despite exercising supplemental jurisdiction over Plaintiffs' state law claims because they were part of the same case or controversy as Plaintiffs' federal claims, "a reexamination of supplemental jurisdictional is proper after dismissing all federal claims before trial." *Miller v. City of Fort Myers*, 424 F. Supp. 3d 1136, 1152 (M.D. Fla. 2020). Specifically, if a district court "has dismissed all claims over which it has original jurisdiction" it may decline to exercise supplemental jurisdiction. 28 U.S.C. § 1367(c)(3).

District courts are, in fact, encouraged to decline to exercise supplemental jurisdiction over state law claims once federal law claims are dismissed. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ("[W]hen the federal-law claims have

dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction."); *L.A. Draper & Son v. Wheelabrator-Frye, Inc.*, 735 F.2d 414, 428 (11th Cir. 1984) ("Indeed, if the federal claims are dismissed prior to trial, *Gibbs* strongly encourages or even requires dismissal of the state claims.") (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). The Court declines to exercise supplemental jurisdiction over the remaining state law claims.

### D.   Sanctions

Plaintiffs moved for sanctions against all Defendants, arguing that the motions to dismiss were frivolous and lacked legal support.[62] Plaintiffs also accused Defendants of misrepresenting that they intended to file answers to the Complaint, rather than motions to dismiss, in seeking an extension.[63] Plaintiffs walked back the latter accusation,[64] however, after Defendants filed the relevant communications, in which they request an extension "to respond to the complaint."[65]

---

[62]   ECF 30-1, at 4–6; ECF 31-1, at 4–6.

[63]   ECF 30-1, at 2; ECF 31-1, at 2.

[64]   ECF 34, at 2 n.1; ECF 35, at 2 n.1.

[65]   ECF 32-1, at 2; ECF 33-1, at 2.

Even without subject matter jurisdiction, the Court may rule on Plaintiffs'
motion for sanctions. *Hyde v. Irish*, 962 F.3d 1306, 1310 (11th Cir. 2020) ("[S]anctions
under Federal Rule of Civil Procedure 11 are a 'collateral' issue and thus a court
may decide a Rule 11 sanctions motion even if it lacks jurisdiction over the
underlying case.") (*Willy v. Coastal Corp.*, 503 U.S. 131, 137 (1992)). Doing so is
"both constitutionally permissible and practically important." *Id.*

"The purpose of Rule 11 sanctions is to 'reduce frivolous claims, defenses,
or motions, and to deter costly meritless maneuvers.'" *Kaplan v. DaimlerChrysler,
A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003) (quoting *Massengale v. Ray*, 267 F.3d 1298,
1302–03 (11th Cir. 2001)). Such sanctions are appropriate in the following
circumstances:

> (1) when a party files a pleading that has no reasonable
> factual basis; (2) when the party files a pleading that is
> based on a legal theory that has no reasonable chance of
> success and that cannot be advanced as a reasonable
> argument to change existing law; or (3) when the party
> files a pleading in bad faith for an improper purpose.

*Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996) (quoting
*Jones v. Int'l Riding Helmets, Ltd.*, 49 F.3d 692, 694 (11th Cir. 1995)).

The standard for assessing conduct under Rule 11 is objective: "whether a
reasonable attorney in like circumstances could believe his actions were factually
and legally justified." *Kaplan*, 331 F.3d at 1255 (citing *Riccard v. Prudential Ins. Co.*,

307 F.3d 1277, 1294 (11th Cir. 2002)). In conducting the inquiry, the court "first determines whether the party's claims are objectively frivolous—in view of the facts or law—and then, if they are, whether the person who signed the pleadings should have been aware that they were frivolous; that is, whether he would have been aware had he made a reasonable inquiry." *Worldwide Primates*, 87 F.3d at 1254 (citing *Jones*, 49 F.3d at 695).

Plaintiffs contend that Rule 11 sanctions are warranted because Defendants' (1) failed to acknowledge that Plaintiffs also alleged federal question jurisdiction in moving to dismiss for lack of subject matter jurisdiction and (2) improperly argued that dismissal is warranted because Plaintiffs alleged facts "upon information and belief," even though such allegations are permissible.[66]

Defendants' arguments were not objectively frivolous. The Court ruled consistently with Defendants' arguments that Plaintiffs failed to allege, or otherwise show, that the amount-in-controversy exceeded $75,000.00 and that Plaintiffs' allegations based upon information and belief were implausible because they lacked a factual basis. Plaintiffs have not shown that Rule 11 sanctions are warranted.

---

[66]   ECF 30-1, at 4–5; ECF 31-1, at 5.

IV.    **CONCLUSION**

Bomer, Bowen, and PCM's motion to dismiss [ECF 26] and Dantzler's motion to dismiss [ECF 27] are **GRANTED**. Plaintiffs' Complaint is **DISMISSED WITHOUT PREJUDICE**. Plaintiffs' motions for sanctions against Bomer, Bowen, and PCM [ECF 30] and Dantzler [ECF 31] are **DENIED**. Plaintiffs are **GRANTED** leave to amend their Complaint within 10 days of this order. The Clerk is **DIRECTED** to close this case if no Amended Complaint is filed within 10 days of this order.

**SO ORDERED** this 28th day of March, 2022.

Steven D. Grimberg
United States District Court Judge